# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **C.C., H.R.-1, and R.K.**

**No. 22-898** (Raleigh County CC-41-2022-JA-180-B, CC-41-2022-JA-181-B, and CC-41-2022-JA-182-B)

## MEMORANDUM DECISION

Petitioner Father M.K.[1] appeals the Circuit Court of Raleigh County's November 3, 2022, order terminating his parental, custodial, and guardianship rights to C.C., H.R.-1, and R.K.[2] On appeal, petitioner argues that the circuit court erred in not providing him with a meaningful opportunity to be heard, applying "negative inferences," and adjudicating him as an abusing parent against the weight of the evidence. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In June 2022, the DHS filed an abuse and neglect petition against petitioner after it investigated allegations that petitioner had inappropriately touched C.C., the daughter of his live-in girlfriend, H.R.-2. According to the petition, then-five-year-old C.C. disclosed to Child Protective Services ("CPS") workers that petitioner would touch and squeeze her breasts, belly button, and "private area" when petitioner changed her clothes. The petition also noted that petitioner's children, H.R.-1 and R.K., resided at the home where the abuse allegations took place. The sexual abuse allegations also resulted in petitioner's arrest.

---

[1]Petitioner appears by counsel Tenisha D. Cline. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Andrew T. Waight. Counsel Juliana C. Dotsenko appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because one child and one mother share the same initials, we will refer to them as H.R.-1 and H.R.-2, respectively.

1

At the June 28, 2022, preliminary hearing, the circuit court set the matter for adjudication on August 23, 2022. The DHS filed its witness and document disclosures on July 20, 2022, which identified the witnesses it expected to call at the adjudicatory hearing along with summaries of the witnesses' anticipated testimony. The day before the adjudicatory hearing, petitioner filed a motion seeking a one-month continuance for additional time to prepare for the hearing, including interviewing witnesses and hiring a private investigator, which the circuit court denied. At the adjudicatory hearing, petitioner again requested a continuance of the hearing to allow his expert witness time to review the matter and render an opinion. The circuit court proceeded with the hearing and reserved ruling on the necessity of holding the record open to receive the expert witness's testimony and report until the end of the hearing.

The DHS presented testimony from multiple witnesses, including the investigating detective, the CPS worker, and the forensic interviewer from the Child Advocacy Center ("CAC"). The detective testified that she investigated the allegations of sexual abuse against petitioner, the results of which she believed supported criminal charges. The detective explained that when police officers arrived to execute a search warrant, petitioner "ran on foot" into the woods and had to be located by a canine. When the detective spoke with petitioner, he admitted that he "may have touched [C.C.'s] breasts" while changing the child's clothes. The detective also testified that she found "naked or half-nude" photographs of H.R.-2 on petitioner's and H.R.-2's cell phones taken at a playground with one of the children in the background of at least one photograph. There were no objections to the detective's testimony about the photographs.

The DHS next presented testimony from the CAC interviewer who explained that C.C. said petitioner whipped her with his belt on her butt; kicked her with his boot; touched her "boobs"; touched her "monkey," which was C.C.'s term for vagina; inserted his "nail" in her monkey causing pain; took pictures of her with no clothes on at her "favorite" park underneath the slide; and told her not to tell anyone, or he would "bust her butt." C.C. demonstrated petitioner's conduct on an anatomical doll. The CAC interviewer was then cross-examined by petitioner's counsel. A recording of the CAC interview was admitted as evidence without objection. Petitioner requested that the recording be played at the hearing. The circuit court refused the request noting that all parties, including the circuit court, had received and reviewed copies of the recording, thus, there was "no function to be served" by playing it.

Finally, the DHS presented testimony from the CPS worker. The CPS worker explained that what C.C. disclosed in conversations with her was consistent with the CAC interview and the allegations in the petition. At the conclusion of the CPS worker's testimony, the DHS rested its case.

Petitioner called H.R.-2 to testify. She testified that she did not believe the allegations C.C. made about petitioner and thought that C.C. was "coached" into making the allegations. During her cross-examination, H.R.-2 confirmed that petitioner took photographs of her topless and with her pants pulled down at a park while the children were present. Petitioner did not testify, and no other witnesses were called.

At the conclusion of the evidence, the circuit court revisited petitioner's request to hold the record open until petitioner's expert witness could offer an opinion. Petitioner explained that

2

he expected the expert witness to offer an opinion on the structure of the CAC interview and the credibility of C.C.'s statements. After each party argued its position on the issue, the circuit court concluded that petitioner did not articulate a sufficient nexus between the expert's opinion on the structure of the CAC interview and an opinion as to the substance and credibility of the information presented during the interview. As a result, the circuit court declined to hold the record open to receive the expert witness's opinion. The circuit court also preserved petitioner's objection and ability to later supplement the record.

The DHS requested the circuit court to apply an "adverse inference" to petitioner's decision not to testify at the hearing. Before granting the DHS's request, the circuit court asked petitioner to state his position on the matter. Petitioner's counsel did not object to the application of this inference, and instead commented that it "may have been a poor choice" but "it's obvious we elected not to put him on." Accordingly, the circuit court proceeded to adjudicate petitioner as an abusive parent due to the physical and sexual abuse of C.C. The circuit court found that the CAC interview, the testimony presented, and the permissible inferences constituted clear and convincing evidence supporting a finding that petitioner physically and sexually abused C.C.

Given that petitioner does not challenge the ultimate termination of his parental rights, it is sufficient to note that the circuit court terminated petitioner's parental, custodial, and guardianship rights to the children following a dispositional hearing in November 2022. It is from the dispositional order that petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner asserts three assignments of error regarding his adjudication. In his first assignment of error, petitioner argues that the circuit court erred in denying him a meaningful opportunity to be heard. Specifically, petitioner contends that, at the adjudicatory hearing, he was denied the opportunity to present expert witness testimony because the circuit court refused to continue the adjudicatory hearing so that the expert could testify and refused to hold the record open to receive the expert's report.[4]

---

[3]The mothers' parental, custodial, and guardianship rights were also terminated. The permanency plan for C.C. is to remain with the nonabusing father. The permanency plan for H.R.-1 and R.K. is adoption in their current placements.

[4]In support of this assignment of error, petitioner also alleges that the circuit court denied him the opportunity to examine evidence presented against him. Petitioner claims that the circuit court allowed testimony from the detective about photographs that were not provided to him in discovery by the DHS. However, petitioner never made an objection to the detective's testimony about the photographs at the adjudicatory hearing. Accordingly, we find that petitioner has waived this argument on appeal, and as such, we decline to address the issue. *See In re Tiffany Marie S.*, 196 W. Va. 223, 234, 470 S.E.2d 177, 188 (1996) ("[P]arties must object to the wrongful offer of evidence at a particular time and with reasonable specificity. . . . Silence in the circuit court typically constitutes a waiver of objection." (citation omitted)); *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 679 S.E.2d 650 (2009) ("Our general rule is that

While petitioner is correct that he was entitled to a meaningful opportunity to be heard as he had parental and/or custodial rights to the children, we disagree that the circuit court denied him this opportunity by refusing his motion to continue and refusing to hold the record open. *See* W. Va. Code § 49-4-601(h) ("[T]he party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses."). It is in the circuit court's discretion to decide whether a continuance of a proceeding is warranted. *See In re Tiffany Marie S.*, 196 W. Va. 223, 235, 470 S.E.2d 177, 189 ("Whether a party should be granted a continuance for fairness reasons is a matter left to the discretion of the circuit court, and a reviewing court plays a limited and restricted role in overseeing the circuit court's exercise of that discretion."). In abuse and neglect cases, we have recognized that "abuse can be found in the denial of a continuance only when it can be seen as 'an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay[.]'" *Id.* at 236, 470 S.E.2d at 190 (quoting *Morris v. Slappy*, 461 U.S. 1, 11–12 (citation omitted)). Furthermore, Rule 7 of the West Virginia Rules of Procedure for Abuse and Neglect Proceedings provides that continuances "shall be granted only for good cause."

Here, we find that the circuit court's refusal to continue the hearing or hold the record open was neither unreasonable nor arbitrary as there is nothing in the record showing that good cause existed. Instead, the record shows that petitioner waited until the day before the hearing to inform the circuit court that he needed more time to prepare for adjudication. The CAC interview was distributed to the parties on June 29, 2022, and the adjudicatory hearing was held on August 23, 2022. Notably, petitioner had not even provided notice to the parties of his intent to introduce testimony of his expert witness before the adjudicatory hearing, as required by Rule 10(c)(3) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. Petitioner's untimely disclosure of an expert witness and failure to prepare is not good cause to justify delay of an adjudicatory hearing. *See* Syl. Pt. 1, in part, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991) ("Unjustified procedural delays wreak havoc on a child's development, stability and security."). Moreover, petitioner was given the opportunity to present and cross-examine witnesses at the hearing. Accordingly, we find no error in the circuit court's decision to refuse petitioner's request to continue the adjudicatory hearing or to hold the record open.[5]

Additionally, petitioner claims that he was denied the opportunity to cross-examine the forensic interviewer at the adjudicatory hearing because the circuit court refused to play the recorded CAC interview during the adjudicatory hearing. Petitioner asserts that this prohibited him from impeaching the witness. This claim is unsupported by the record. A transcript of the

---

nonjurisdictional questions . . . raised for the first time on appeal, will not be considered." (quoting *Shaffer v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 349 n.20, 524 S.E.2d 688, 704 n.20 (1999)).

[5]Petitioner further argues that the circuit court erred in its reasoning for refusing to hold the record open to receive the expert's report. Because we find that refusal of petitioner's motion to continue was not in error, we need not address this argument.

hearing shows that petitioner's counsel conducted a cross-examination and two recross-examinations of the forensic interviewer. The admission of the recorded CAC interview into evidence was not met with objections from any party. While petitioner's request to play the recorded interview at the hearing was denied, petitioner did not explain to the circuit court that he intended to use it to impeach the witness. Accordingly, we find no error.

In his second assignment of error, petitioner challenges the circuit court's application of "negative inferences" against him at the adjudicatory hearing.[6] Petitioner acknowledges that this Court has held that "where the parent or guardian fails to respond to probative evidence offered against him . . . a lower court may properly consider that individual's silence as affirmative evidence of that individual's culpability." *See* Syl. Pt. 2, *W. Va. Dep't of Health and Hum. Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 475 S.E.2d 865 (1996). Nevertheless, petitioner contends that application of this "negative inference" was not appropriate because the circuit court limited the subject matter of his defense by not allowing his expert to testify, which rendered petitioner "unprepared to testify." We find no merit in this argument. The circuit court asked counsel at the adjudicatory hearing whether any party had additional witnesses to present. Petitioner did not inform the circuit court that he was unprepared to testify that day but could be prepared on a later date. In fact, after the DHS requested that the circuit court use petitioner's silence as affirmative evidence of his culpability, petitioner's counsel conceded that it "may have been a poor choice" but "it's obvious we elected not to put him on." Accordingly, we find no error in the circuit court's consideration of petitioner's silence at the adjudicatory hearing as evidence of his culpability in this civil abuse and neglect proceeding.

Finally, in his third assignment of error, petitioner argues that the circuit court erred by adjudicating him as an abusing parent against the weight of the evidence. Specifically, petitioner contends that the only evidence of sexual abuse by petitioner was C.C.'s forensic interview, which he believes was not credible. However, we find that the evidence was sufficient to adjudicate petitioner. Though petitioner claims that C.C.'s interview was not credible, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). We refuse to disturb the credibility determinations made by the circuit court.

Again, the DHS presented more than sufficient evidence to adjudicate petitioner. The CPS worker testified that her interview with C.C. was consistent with the forensic interview and the allegations in the petition. Further, petitioner refused to testify at the hearing, which, as discussed above, the circuit court used as affirmative evidence of petitioner's culpability.

---

[6]Petitioner also argues that it was error for the circuit court to apply a negative inference against him because he fled from police when they executed a search warrant related to criminal charges stemming from the sexual abuse allegations in this case. Because petitioner fails to provide any analysis concerning this issue in his brief, we decline to address this issue. *See State v. Larry A.H.*, 230 W. Va. 709, 716, 742 S.E.2d 125, 132 (2013) ("Although we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").

5

Similarly, the circuit court used testimony that petitioner fled from law enforcement as affirmative proof of petitioner's culpability. The evidence against petitioner was sufficient, and we find no error in the circuit court's adjudication of petitioner as an abusing parent. *See* Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) ("[West Virginia Code § 49-4-601(i)], requires the [DHS], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHS] is obligated to meet this burden." (quoting Syl. Pt. 1, *W. Va. Dep't of Health and Hum. Res. ex rel. Wright v. Brenda C.*, 197 W. Va. 468, 475 S.E.2d 560 (1996))).

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 3, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: April 15, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn